

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

DEC 1 8 2017

RICK WARREN
COURT CLERK

**IN THE DISTRICT OF OKLAHOMA COUNTY**
**STATE OF OKLAHOMA**

| | | |
|---|---|---|
| 1. CHASTIN HAYES, | ) | 34_____ |
| Plaintiff, | ) | CJ-17- **CJ-2017-7089** |
| v. | ) | JURY TRIAL DEMANDED |
| 1. NE PROPERTY MANAGEMENT, LLC., | ) | ATTORNEY LIEN CLAIMED |
| Defendant. | ) | |

## PETITION

**COMES NOW THE PLAINTIFF**, and hereby pleads her claims as follows:

### PARTIES

1. The Plaintiff is Chastin Hayes, an adult resident of Oklahoma County, Oklahoma.

2. The Defendant is NE Property Management, LLC, a foreign limited liability company doing business in Oklahoma County, Oklahoma.

### VENUE

3. Plaintiff's claims are for disability discrimination, including denial of reasonable accommodations and retaliation after Plaintiff requested accommodations in violation of the Americans with Disabilities Act (ADA) and Oklahoma's Anti-Discrimination Act (OADA); race discrimination and retaliation after Plaintiff complained of race discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 1981 and the OADA; and interference with Plaintiff's rights under the FMLA.

1



EXHIBIT 1

4. The Defendant is located and does business in Oklahoma County, and the actions giving rise to this action occurred in Oklahoma County, such that venue is proper.

## STATEMENT OF FACTS

5. To Plaintiff's knowledge and belief, the Defendant employed at least fifty employees within seventy-five road miles of Plaintiff's work location, during at least twenty calendar weeks in the current or proceeding calendar year, such that they are employees under the FMLA, Title VII and the ADA. There is no minimum employee requirement to be subject to the OADA or 42 U.S.C. § 1981.

6. The Plaintiff, African American (black) adult, was employed by the Defendant from around August 8, 2015 until around November 7, 2016.

7. Plaintiff began her employment with Defendant as a Leasing Agent and, around September 2016, was promoted to the position of Assistant Property Manager.

8. Plaintiff was qualified for her position as Assistant Property Manger and performed her job duties in a satisfactory manner.

9. Around March 2016 Plaintiff became supervised by Vernessa Mead[1] (Property Manager)(Caucasian).

10. As her supervisor, Ms. Mead made derogatory comments about the Plaintiff's race, including telling Plaintiff that she needed to straighten her hair before reporting for work because it looked "too ethnic" and so that her hair would look "less ethnic" after straightening. Ms. Mead also referred to Plaintiff as a "little chocolate drop."

---

[1] Spelling is approximate and based on information currently available to the Plaintiff.

2

11. Plaintiff opposed the racial discrimination, including by telling Ms. Mead that she would not straighten her hair so that it looked, in Ms. Mead's view, "less ethnic." Ms. Mead's comments, and Plaintiff's opposition, continued until the same month that Plaintiff was terminated.

12. Plaintiff suffers from severely high blood pressure and related impairments that, without the ameliorative effects of mitigating measures, substantially limits at least one major life activity (including major bodily function) including:

    A. Plaintiff would be at substantial risk of having a stroke;

    B. Plaintiff's circulatory function would be substantially limited.

13. Around March 2016 Plaintiff notified Ms. Mead of her severely high blood pressure. Plaintiff requested accommodations in the form of taking off work about two times per month for medical treatment for her high blood pressure.

14. Plaintiff also requested from Ms. Mead the ability to take short breaks during her shift to check her blood pressure and ensure it was within a safe range.

15. The accommodations requested in paras. 13-14 were reasonable accommodations.

16. In response to Plaintiff's requests for accommodation, Ms. Mead became angry and continued to be angry at Plaintiff when she would ask off work and mention that she needed a break to take her blood pressure.

17. Around the first week of November 2017, Plaintiff began suffering significant pain in her mouth and such pain was diagnosed as an abscessed tooth. As a result of the

3

pain, Plaintiff's blood pressure increased, and Plaintiff began to experience dizziness, numbing in her fingers and other symptoms.

18. Around November 7, 2017, Plaintiff received a telephone call from her dentist, who told Plaintiff that they need to see her immediately.

19. Plaintiff was at work when she was required to go to the dentist promptly to remediate the abscess in her tooth which would assist in bringing down her high blood pressure.

20. Plaintiff notified her co-worker that she needed to go to the dentist immediately. The co-worker took over for the Plaintiff in Plaintiff's duties so that Plaintiff could seek medical treatment. Plaintiff attempted to notify her supervisors, but they were both on a retreat and did not answer the phone or return Plaintiff's call.

21. Plaintiff was involuntarily terminated a few days after November 7, 2017.

22. Ms. Mead told Plaintiff that she "knew [Plaintiff] had a medical emergency," but that Plaintiff was nonetheless terminated for not receiving permission from Ms. Mead or Jamie (last name unknown)(Regional Manager) before taking off work.

23. Ms. Mead acknowledged that Plaintiff had attempted to notify her and Jamie, but that both managers were on a retreat and unavailable to speak with the Plaintiff.

24. As of August 8, 2015, the Plaintiff had worked for the Defendant for at least one year, and had worked for the Defendant for at least 1,250 hours in the prior 12 months.

25. After August 2, 2015, the periods Plaintiff took off work for medical appointments were absences protected under the FMLA.

26. Defendant never provided Plaintiff notice of her rights under the FMLA and did not apply the FMLA to the Plaintiff's absences, both violations of the FMLA.

27. Around December 7, 2016, Plaintiff underwent a medical procedure related to her high blood pressure. As a result, Plaintiff was required to remain on bed rest for about three to five days. Had Plaintiff not been terminated, she would have been able to exercise her rights under the FMLA during that period of incapacity. However, because she was terminated, she was unable to exercise her FMLA rights, which is itself unlawful interference with the FMLA.

28. As a direct result of the Plaintiff's termination, the Plaintiff has suffered, and continues to suffer, wage loss (including back, present and front pay along with the value of benefits associated with such wages) and emotional distress/dignitary harm, including worry, sadness, anxiety and similar unpleasant emotions.

29. At the least, Defendant's conduct was motivated by her race, complaints of race discrimination, her disability, her requests for accommodation and/or her requests for FMLA protected leave.

30. Plaintiff has exhausted her administrative remedies by timely filing an EEOC charge of discrimination on March 17, 2017. The EEOC issued Plaintiff her right to sue letter on October 6, 2017, and Plaintiff received such letter thereafter. This Petition is timely filed within ninety (90) days of Plaintiff's receipt of her right to sue letter.

## COUNT I

Plaintiff incorporates the above allegations and further alleges:

31. Race discrimination, including retaliation after Plaintiff opposed such discrimination, violates Title VII, the OADA and 42 U.S.C. § 1981.

32. Under this Count Plaintiff is entitled to her wage loss (including back, present and front pay, along with the value of benefits associated with such wages), emotional distress/dignitary harm damages, attorneys' fees and costs.

33. Because the actions of the Defendant were willful or, at the least, in reckless disregard of Plaintiff's rights, she is entitled to an award of punitive damages under Title VII and 42 U.S.C. §1981.

34. Plaintiff is entitled to liquidated damages under the OADA.

## COUNT II

Plaintiff incorporates the above allegations and further alleges:

35. Disability discrimination, including retaliation after Plaintiff requested reasonable accommodations, violates the ADA and the OADA.

36. Under this Count Plaintiff is entitled to her wage loss (including back, present and front pay, along with the value of benefits associated with such wages), emotional distress/dignitary harm damages, attorneys' fees and costs.

37. Because the actions of the Defendant were willful or, at the least, in reckless disregard of Plaintiff's rights, she is entitled to an award of punitive damages under the ADA.

38. Plaintiff is entitled to liquidated damages under the OADA.

## COUNT III

Plaintiff incorporates the above allegations and further alleges:

39. Failure to provide Plaintiff notice of her FMLA rights, retaliation after Plaintiff requested FMLA protected leave, and interference with Plaintiff's right to utilize FMLA leave, are all violations of the FMLA.

40. Under this Count the Plaintiff is entitled to her wage loss and liquidated damages.

## PRAYER

**WHEREFORE**, Plaintiff requests this Court enter judgment in her favor and against the Defendant and grant her all compensatory damages suffered, together with all damages, liquidated damages, attorneys' fees, costs and interest and such other legal and equitable relief as this Court deems just and proper in an amount exceeding that required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code.

**RESPECTFULLY SUBMITTED THIS** 18th **DAY OF DECEMBER 2017.**

HAMMONS, GOWENS, HURST
& ASSOCIATES

_____
Mark E. Hammons, OBA No. 3784
Amber L. Hurst OBA No. 21231
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Email: Amber@hammonslaw.com
*Counsel for Plaintiff*
JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED